(Decided April 15th, 1864.)

CHARLES BURROWS *vs.* MICHAEL TRIEBER.

INN-KEEPER: LIABILITY OF FOR GOODS LOST OR STOLEN.—Inn-keepers are liable for goods of a guest which are brought to him within the inn.

A delivery of the goods of a guest into the custody of the inn-keeper, is not necessary to charge him with them; for although the guest does not deliver them, or acquaint the inn-keeper with their whereabouts, still, the latter is bound to pay for them if they are stolen or carried away, even though the person who may have stolen them, or carried them away, is unknown.

There are exceptions to the liability of inn-keepers,—as inevitable accidents—the acts of public enemies—and the acts of the owners of property

Burrows *vs.* Trieber.

or their servants. This last exception must be construed to mean a dis-charge of liability where the owner takes control of his property, though it be still *infra hospitium*, and its loss or injury may be attributed to his own neglect.

————: EVIDENCE: NEGLIGENCE.—It is not necessary, when the goods are proved to be lost, to prove negligence in the inn-keeper to make him liable for the loss.

The evidence of neglect on the part of the guest must be confined to the period while he was a guest at the inn; and evidence is inadmissible tending to show the neglect and inattention of the guest previous to his becoming such, or his subsequent conduct after leaving the inn.

APPEAL from the Circuit Court for Allegany County:

The action in this case was instituted by the appellant on the 25th of March 1862, to recover for the loss of a trunk, (containing besides clothing more than $1500 in Canada bank notes,) and a chest of tea worth $102, while the plaintiff was stopping as a guest at the hotel of the defendant in the City of Cumberland.

*Exception.* The plaintiff at the trial of the cause, to maintain the issue on his part, proved by James M. Schley, that in January 1862, he was employed by the plaintiff as an attorney, and that he went to see the defendant and told him he had been employed by an old man named Burrows, to bring suit against him for the loss of a trunk and a chest of tea; that the defendant replied that the plaintiff with his wife and children had stopped at his hotel, and he had seen in the entry a chest and a trunk, which the old man claimed as his baggage, and that it was gone. That the only way he (Trieber) could account for the baggage getting out of the entry was, that a Colonel and some officers had stopped there the night Burrows came to his house, and he supposed it must have been carried out along with their baggage at the time they went off, which was before daylight.

The plaintiff proved by his own oath the contents of the trunk and chest, and their value, and that the trunk was a brown leather one. And also proved by *Mr. Kegg,* that the plaintiff came to his house about the first of January

41    v. 21

1862, and stopped with witness, (an inn-keeper,) one night, after he left Trieber's; and that the hotels of the town were all full at the time with soldiers. Witness sent his porter over to Trieber's for the baggage of the plaintiff.

The defendant then proved by *George Gasman*, that he was a clerk for the defendant during the years 1861 and 1862; that the plaintiff arrived at the defendant's hotel at New Year's, 1862, and was there two or three days; that he said nothing to witness during that time about his baggage, and only inquired for it when he was about to leave; that he did not see the trunk of the plaintiff in the house, and thought if it had been there he must have seen it; that it was his duty when guests arrived at the hotel to ask and see if they had baggage, and if so, to send it to their rooms; that he saw nothing of any box of tea or trunk brought in; that it was about ten o'clock, P. M., when the plaintiff took a room, and he did not then ask for his trunk to be sent to his room, so far as the witness heard, and that he never heard him say that he had lost a trunk until he had left; that the witness was up pretty much the whole night of the plaintiff's arrival and had to pass through the hall frequently, and thought he would have seen the trunk and box of tea if they had been in the hall.

On cross-examination this witness stated that the house was full the night the plaintiff came to the hotel; that he did not give him a room and would not say that he staid at the hotel that night; that he did not know whether the plaintiff spoke to the defendant about his trunk or baggage, or not; and that it was as much the defendant's place as the witness's to see that the baggage of guests at the house was sent to their rooms, and both attended at the office; that he never saw any baggage of the plaintiff; that in passing through the hall that night he saw *there* trunks and boxes, and that they might have all belonged to the plaintiff for any thing he knew.

The defendant also proved by *Elias Groves*, that on New Year's day 1862, a trunk was put on the train at Cumber-

land, by whom he knows not, and it was put off at Green Spring depot; that it was a hair trunk with a rope around it, and the witness saw the trunk at Green Spring two or three days after. The defendant also proved by *John H. Ady*, the baggage master on the train on which the plaintiff came to Cumberland, that the plaintiff got upon the train at Rodmer's Tunnel on the Balto. & O. R. R., bringing with him the baggage as before described; that he asked the plaintiff where he was going, and where he wanted his baggage taken, and that his answer was that he did not know exactly, but that he would have his baggage taken to Cumberland; that the train arrived at Cumberland that night about thirty-five minutes past nine, where he saw the plaintiff's baggage on the platform, and that having occasion to pass the same spot about half past ten, still saw it lying there.

*N. A. Hoffman*, a witness of the defendant, a breaksman upon the said train, testified to the same effect as the preceding witness as above; and both of said witnesses testified to an apparent indifference and carelessness on the part of the plaintiff, as to his baggage, as evidenced in the insecure mode by which the trunk was fastened, viz: tied together with a bed-cord; and his omission to make inquiries or give directions about his baggage while on the train. The witness Ady also proved that he boarded at the hotel of the defendant during the time the plaintiff was there, and was about the part of the house where the baggage is usually placed, both on the night of the plaintiff's arrival there, and during the next day, but saw nothing of it; and further, that owing to the peculiar appearance of the baggage he would have noticed it if it had been there.

The plaintiff offered two prayers, which were granted by the Court, (WEISEL, J.,) and the defendant offered six prayers, all of which were refused except the 2nd and 4th. This appeal was taken by the plaintiff from the ruling of the Court, in granting said 2nd and 4th prayers of the defendant. The appellant, at the hearing in this Court, abandon-

ed his objection to the 4th prayer. The defendant's 2nd prayer was as follows:

The defendant by his counsel prays the Court to instruct the jury, that if they shall believe from the evidence in the cause, that the plaintiff was received as a guest, as set forth in the said declaration, into the inn of the said defendant, and if they shall further believe from the evidence in the cause that the trunk of the said plaintiff, containing the said goods and chattels, as set out in the said declaration, were brought into the inn of the said defendant, as charged in the said declaration, and placed in the hall of the said inn of the said defendant, and that a room was assigned to the said plaintiff and his family in the said inn of the said defendant, and occupied by the same as guests in the said inn; and if the jury shall further believe, that the said trunk with its contents were carried off and lost to the said plaintiff by or through his own gross neglect and carelessness, that he is not entitled to recover the same in this action, unless they shall further find that the said trunk and contents were carried away and lost to the said plaintiff by the fraud or *mala fides* of the defendant, his servants and others in his employ.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH and COCHRAN, J.

*Oliver Miller,* for the appellant :

1st. The second prayer was erroneously granted. It asserts "that if the jury find that the trunk, &c., were brought into the defendant's inn and placed in the hall of the inn, and that a room was assigned to the plaintiff and his family in the inn, and occupied by them as guests of the defendant in the inn, and then if they shall further believe the trunk, &c., were carried off and lost to the plaintiff by or through his own gross neglect or carelessness, he is not entitled to recover, unless," &c. Now upon the theory of this prayer, that the trunk was brought to the inn, there

was no proof whatever in the case of gross neglect and carelessness on the part of the plaintiff.

The proof is that the plaintiff ordered the trunk to his room, but if he had failed to do this, it would not have been gross neglect or carelessness, and the defendant would have still been liable. 1 *Parsons on Cont.*, 623 to 627, and notes. *Story on Bailments*, secs. 456, 457. *Armistead vs. White*, 6 *Eng. Law & Eq. Rep.*, 349. *Burgess vs. Clements*, 4 *Maule & Selw.*, 306. *Richmond vs. Smith*, 8 *Barn. & Cress.*, 9. *Calye's Case*, 8 *Coke Rep.*, 32. *McDonald vs. Edgerton*, 5 *Barb.*, 560. *Clute vs. Wiggins*, 14 *Johns.*, 175. *Sibley vs. Aldrick*, 33 *New Hamp. R.*, 553. *Story on Bailments*, secs. 470, 471, 472, 478, 479, 480, 482, 483, 484. *Bennett vs. Millor*, 5 *T. R.*, 273. *Shaw vs. Berry*, 31 *Maine*, 78.

*Thomas S. McKaig* and *Thomas A. Hopkins*, for appellee :

The appellee's second prayer was properly granted, for the following reasons :

As an independent legal proposition it is admitted, that an inn-keeper is answerable for the loss of his guest's goods while at his inn. But it is submitted that that responsibility is only *presumptive*, and that the inn-keeper may exonerate himself by proof that the loss is attributable to the gross personal negligence of the guest himself. The books are full of authorities maintaining the position that an inn-keeper is not liable for losses happening to the goods of travellers becoming his guests, caused by the act of God, or the public enemies, or by the conduct of the guest himself, or his servant, or the companion whom he brings with him. The policy of the law does not work oppression on the inn-keeper by insuring at his expense the guest against the probable, reasonable, and plain consequences of his own culpable *laches*. The obligation of the inn-keeper and guest is mutual and cumulative, at least in so far that the latter will not be permitted to take advantage of his own wrong.

To allow him to do so, would be unconscionable, and a palpable fraud on the inn-keeper. The difference in the responsibility of the appellee, which might be made by evidence that there was fraud in him, may be considered as a purely abstract question here; for it is not contended there was any fraud in him. *Calye's Case*, 8 *Coke Rep.*, 32. *Story on Bail.*, 472, 483. 1 *Pars. on Cont.*, 624. *Com. Dig.* "*Action on case for negligence,*" B. 1 & 2. *Burgess vs. Clements*, 4 *M. & S.*, 306. *Armistead vs. White*, 6 *Eng. Law & Eq. R.*, 349. *Mateer vs. Brown*, 6 *Cala.*, 221. *Shaw vs. Berry*, 31 *Maine*, 478. *Merritt vs. Claghorn*, 23 *Verm.*, 177. *Mason vs. Thompson*, 9 *Pick.*, 280, 284. *Metcalf vs. Hess*, 4 *Ill. R.*, 129.

GOLDSBOROUGH, J., delivered the opinion of this Court:

This case is presented for our consideration upon an exception taken by the appellant to the ruling of the Circuit Court for Allegany County, in granting the second and fourth prayers of the appellee.

The counsel of the appellant having abandoned the fourth prayer, our attention will be confined to the second. The questions arising out of this prayer, are of sufficient moment to demand our serious consideration.

One important question is, the liability of inn-keepers and the relative obligation of host and guest. Many authorities have been produced by the counsel of the appellant, to show that the responsibility of an inn-keeper attaches from the time a guest, with his property, is *infra hospitium.*

It is contended on the part of the appellee, that this responsibility is only presumptive, and may be released by proof that the loss is attributable to the gross personal negligence of the guest himself.

By an examination of the authorities it is clear, that inn-keepers are liable for the goods of a guest which are brought by him within the inn, *infra hospitium.* See *Story on Bailments, sec.* 478. 5 *Term Rep.*, 273. 2 *Kent's Com.*, 593, 594. 5 *Barbour's S. C. R. of N. Y.*, 560.

Burrows *vs.* Trieber.

It is equally well settled, that a delivery of the goods of a guest into the custody of the inn-keeper is not necessary to charge him with them; for although the guest does not deliver them, or acquaint the inn-keeper with them, still the latter is bound to pay for them if they are stolen or carried away, even though the person who stole them or carried them away is unknown. See *Story on Bailments*, *sec*. 579, cited with approbation in 5 *Barbour*, 560.

The authorities fully sustain the doctrine, that it is not necessary, when the goods are proved to be lost, to prove negligence in the inn-keeper, to make him liable for the loss. See *Calyc's Case*, 8 *Coke*, 32. 5 *Term Rep.*, 273. 14 *Johns.*, 177. 2 *Kent's Com.*, 594, 595. 5 *Barbour*, 562. 31 *Maine*, 485. In this last case it is decided that an inn-keeper's liability for goods and chattels stolen or injured at his inn, extends beyond his fidelity and that of his servants. The appellee however insists, that he is discharged from his liability, if the property for the loss of which this suit is brought, was carried off and lost to the appellant by or through his own gross neglect or carelessness.

It is doubtless true that there are exceptions to the liability of inn-keepers:—as inevitable accidents,—the acts of public enemies,—and of the owners of property or their servants. This last exception must be construed to mean a discharge of liability where the owner takes control of his property, though it be still *infra hospitium*, and its loss or injury may be attributed to his own neglect.

Having thus expressed our view of the law applicable to the responsibility of inn-keepers, and under what circumstances it may be absolved, we proceed to apply the law thus announced to the appellee's second prayer.

In our opinion this prayer was erroneously granted, there is no sufficient evidence to prove that the appellant's goods were lost by his gross neglect while he was a guest in the appellee's hotel. The evidence must be confined to that period; and that which was produced by the appellee, tending to show the neglect and inattention of the appellant

previous to his becoming his guest, or his subsequent con-
duct after leaving the hotel, could not be considered by the
jury touching the merits of this case.    The judgment must
be therefore reversed.

*Judgment reversed, and procedendo awarded.*

(Decided April 19th, 1864.)