GERTRUDE ROUECHE *v.* HOTEL BRADDOCK, INC.
[No. 29, January Term, 1933.]

*Decided April 21st, 1933.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Lucius Q. C. Lamar* and *Aubrey B. Fennell,* with whom was *J. Bond Smith* on the brief, for the appellant.

*Leslie N. Coblentz,* with whom was *James Clark* and *Amos A. Holter* on the brief, for the appellee.

Sloan, J., delivered the opinion of the Court.

The question here is the liability of àn innkeeper for the loss of money and baggage of a guest, caused in this instance by a fire of unknown origin. It is the same question, except that the fire was in a barn attached to a hotel, presented in *Cutler v. Bonney,* 30 Mich. 259, where Judge Campbell, in one of the best considered opinions on the subject, said: "It is unfortunate that upon this subject there is some confusion arising from the loose *dicta* in which many courts have indulged, when dealing with cases involving the liability

of innkeepers. It is unsafe to give any force to such remarks beyond the analogies of the cases in which they are found. Upon all questions not decided by recognized and accepted precedents, we can only rest upon the ancient maxims of the common law."

The plaintiff (appellant) was a guest at the appellee's hotel at Braddock Heights in Frederick County on August 12th, 1929, when, as the result of a fire which destroyed the building, she lost $125 in money, baggage, and personal effects, altogether testified to be worth $528. She brought suit against the defendant and from a judgment in its favor she takes this appeal. The plaintiff alleged in her declaration, as part of her claim for damages, personal injuries sustained by her and illness suffered as a result of the fire, but as this question is not presented by the record it is not considered here.

The only question submitted is on an exception to the refusal of the plaintiff's fourth prayer and the court's instruction which was substituted therefor, the instruction as given by the court being a repetition of the plaintiff's with an addition here italicized. The rule of law requested, as submitted by the plaintiff's prayer, was that "if the jury also believe that while such a guest the said hotel caught on fire and that the money, jewels, personal effects and baggage of the said plaintiff were destroyed, then the plaintiff is entitled to recover for said articles of money, jewels, personal effects and baggage provided the jury shall further find that such articles and money were reasonably necessary for her travel to and from said hotel and her sojourn at said hotel," to which the court added, *"and provided the jury shall further find from all of the evidence that the fire mentioned was the result of negligence or lack of reasonable care on the part of the defendant or its agents or servants."*

The strict rule, which allowed of no exception to liability except the act of God or a public enemy, was first stated in Maryland by way of analogy, in 1815, in *White v. Wagner,* 4 H. & J. 373, 391, where it was said: "The common carrier, the inn-keeper, the sheriff, and others not thought material

to enumerate, are responsible for losses which they could not prevent. They stand liable to the owner for all losses, whether sustained by highway robbers, or others, no matter how incontrollable and irresistible may be the force with which they are assailed. The act of God, and of the public enemies, will only free them from the demand, when the loss proceeded from such act or such enemies, and then only when they are free from every exception." The case was a suit for waste by a landlord to recover from a tenant for the damage done his house by a mob. The rule of the innkeeper's liability to his guest, as stated in fourth paragraph of the opinion in *Calye's Case,* 8 Coke, 32, 77 Eng. Reprint, 521, 2 *Smith's Leading Cases* (H. & W. Ed.), 194, is that "the innholder shall not be charged unless there be a default in him or his servants in the well and safekeeping and custody of their guests' goods and chattels within his common inn; for the innkeeper is bound in law to keep them safe without any stealing or purloining," and this the majority construe to mean all the goods brought within the inn, originally adopted in this state (*Towson v. Havre-de-Grace Bank,* 6 H. & J. 47), but later modified here so as to cover only necessary money, baggage, and personal effects, a modification which 16 *Am. & Eng. Enc. Law* (2nd Ed.), 539 says is not supported by authority, in spite of which we still hold it to be the law in this state; and the demand in this case is in accord with our decisions (*Pettigrew v. Barnum,* 11 Md. 434, cited in *Vance v. Throckmorton,* 5 Bush [Ky.] 41, 45; *Giles v. Fauntleroy,* 13 Md. 126; *Maltby v. Chapman,* 25 Md. 310; *Burrows v. Trieber,* 21 Md. 320; *Treiber v. Burrows,* 27 Md. 130. According to 32 *C. J.* 548, "The prevailing view is that like a common carrier, an innkeeper is liable absolutely or as insurer, for all goods of a guest lost in the inn, unless the loss happens by an act of God or a public enemy or by the fault or negligence of the guest himself. The logical consequence of the rule holding innkeepers absolutely liable as insurers is that no distinction is to be made between losses happening from internal causes, such as thefts by other guests or by servants, and those which result from external

causes, such as burglary and robbery, or accidental fire. However, in some jurisdictions, the rule as to the liability of the innkeeper for losses arising from an accidental fire has been changed by decision or statute, so that the innkeeper is no longer liable for property lost by a fire occasioned by unavoidable casualty or superior force and without any fault or negligence on the part of the innkeeper or his servants. The minority view is that the innkeeper is responsible only if he is negligent," and it is singular that *Calye's Case* is cited as authority for all views. 16 *Am. & Eng. Enc. Law* (2nd Ed.), 535 *et seq.*; *Van Zile, Bailments and Carriers* (2nd Ed.), sec. 349. With *Calye's Case* as a foundation, many courts have since extended the rule there laid down to insure all of the guests' goods against loss or damage, no matter how caused, unless by the act of God, public enemy, or the guests' negligence or default.

Except for the fact that both are bailees, the common carrier's responsibility is no criterion for the responsibility of an innkeeper. Lord Coke's rule in terms applied to the damage or disappearance by theft or otherwise of all goods of the guest brought within the inn, no matter whether the landlord was acquainted with them or not, while the common carrier has the goods in his custody for a consideration, from the time the consignor parts with them until they reach their destination, and nothing, without special agreement, will excuse him except the act of God or a public enemy (*Balto. & O. R. Co. v. Green,* 25 Md. 72, 89), unless goods be perishable (*Bloecher & Schaaf v. Pennsylvania R. Co.,* 162 Md. 463, 471, 160 A. 281). There was neither reason nor necessity for linking the two relations together in order to establish a legal principle nor, by analogy, to impose liability on an innkeeper because a carrier would be liable; neither depended on the other for support. The distinction is noted in *McDaniels v. Robinson,* 26 Vt. 316, wherein it was said (Redfield, C. J.): "We regard it as well settled that the liability of an innkeeper is more severe than that of any other bailee, with the single exception of common carriers."

The proposition of the plaintiff is that the common law rule, in all its strictness, should be applied to a case wherein the loss of the guest's baggage and money was occasioned by an accidental fire with no evidence of the innkeeper's negligence, but, on the contrary, evidence that he was not negligent.

The defendant, while agreeing that destruction by fire is not an act of God, contends that it was the result of an inevitable accident which could not have been foreseen or by the exercise of reasonable care have been prevented by the defendant, and asks that this construction be put on a statement of law in the first appeal in *Burrows v. Trieber,* 21 Md. 320, 327, where it was said: "It is doubtless true that there are exceptions to the liability of inn-keepers—as inevitable accidents,—the acts of public enemies,—and of the owners of property or their servants. This last exception must be construed to mean a discharge of liability where the owner takes control of his property, though it be still *infra hospitium,* and its loss or injury may be attributed to his own neglect." 2 *Greenleaf on Evidence* (16th Ed.), sec. 219 and note; *Jones on Evidence (Civil Cases),* (3rd Ed.), sec. 187. The distinction between an act of God and inevitable accident is clearly shown in *Fergusson v. Brent,* 12 Md. 9, cited by the plaintiff, the case of a carrier, where it is asserted with great force that nothing excuses a common carrier but the act of God or a public enemy, while "private carriers will be discharged by proof of loss by inevitable accident." But why import into the case, unless for purposes of comparison, the rule of common carriers? The principles of the common law with regard to innkeepers are sufficient to a solution of any situation which may arise between an innkeeper and his guest. Coke, who announces the principles upon which liability may be founded, did not find any better support than the law as he then found it, and what we have done is to follow him, with liability limited to baggage, personal effects, and necessary money. To add to the rule in *Calye's Case* the rule with respect to common carriers is the assertion of judicial authority rather than the application of the rules as

to common law liability for a failure of duty by one to another to whom it is due. What we have now to decide is whether we shall apply the rule of the common law with respect to the loss of a guest's baggage, as applied in *Trieber v. Burrows,* 27 Md. 130, to a loss occasioned by an accidental fire.

Professor Beale in his book on *Innkeepers and Hotels,* secs. 189 and 190, with regard to the loss of a guest's goods by accidental fire, and of the presumption of negligence against innkeepers, says: "Loss by accidental fire, where the innkeeper was not negligent, charges the innkeeper or not, according to the rule adopted in the jurisdiction concerned." In a state where the stringent liability is imposed, the innkeeper is, liable for a loss by accidental fire. But in jurisdictions which hold the innkeeper liable only for negligence or breach of undertaking, he is not responsible where the goods were lost by accidental fire. Whatever view is adopted, it is agreed that upon loss or injury to the goods being shown, the innkeeper is *prima facie* liable and the burden is upon him to prove such facts as will exonerate him.

The leading case in this country holding for liability of the innkeeper unless excused by one of the three common law causes is *Hulett v. Swift,* 33 N. Y. 571, where damages were allowed for property destroyed by a fire while in a barn attached to an inn, and which resulted in a statute to cure the rigors of the decision. See *Fay v. Pacific Improvement Co.,* 93 Cal. 253, 26 P. 1099, 28 P. 943; *Sibley v. Aldrich,* 33 N. H. 553.

One of the leading cases holding against the application of the rule of *Calye's Case,* where the loss was due to an accidental fire, is *Cutler v. Bonney,* 30 Mich. 259, in which Judge Campbell takes issue with the decision in the *Hulett* case. He says: "The general principle [of the *Calye Case*] seems to be that the innkeeper guarantees the good conduct of all persons whom he admits under his roof, provided his guests are themselves guilty of no negligence to forfeit the guaranty. "We have found no decision [except *Hulett v. Swift, supra,* where the doctrine may be said to rest] holding innkeepers

liable for losses by purely accidental casualties, or from riots, or acts of force from without, such as have been from the beginning excepted by the text writers. These writers, or at least such of them as are of recognized authority, have drawn a line between carriers and innkeepers, resting on the distinction between absolute and qualified responsibility." And again: "It would be a manifest innovation to create a liability where no possible default exists, and to sustain such an innovation, there ought to be both reason and authority." In *Merritt v. Claghorn,* 23 Vt. 177, in an opinion by Judge Redfield, it was held that, where there was no negligence, there could be no responsibility for loss by fire. In *Vance v. Throckmorton,* 5 Bush (Ky.) 41, it was said: "though, *prima facie,* the landlord should be held liable to restore the baggage of his guest, yet when he shows its destruction by fire, this should be regarded as exonerating him from liability, unless it be made to appear that he, or those for whose conduct he is responsible, by negligence caused the fire or failed to extinguish it." And see *Johnson v. Chadbourn Finance Co.,* 89 Minn. 310, 94 N. W. 874.

The fourth prayer as submitted by the plaintiff assumes that if she shows the loss of her money, baggage, and personal effects while a guest of the defendant, that then no defense short of the act of God, a public enemy, or her own negligence will excuse it. When she establishes the relationship and her loss, she does make out a *prima facie* case. The rule of the common law which she invokes contemplated and insured her against a loss which might occur through the fault, negligence, or failure of duty of the innkeeper or his servants, who owed her the extraordinary care and diligence which the innkeeper's business demands. But when it appears that the loss occurred from causes which such care and diligence could not be expected to prevent, then her right to recover must depend upon their freedom from negligence or want of care.

The bill of exceptions shows that the fire which destroyed the hotel was of "unknown origin," and that evidence was offered tending to show that the defendant was not guilty of

negligence and the plaintiff was guilty of contributory negligence, but none of the details of the evidence are given, so that we must rely on the facts as they are stated in the bill of exceptions and draw our conclusions accordingly. The court's instruction would have stated the plaintiff's rights and the defendant's duty correctly if it had been so framed as to put the burden on the defendant of absolving itself from any negligence or want of such care as its duty as an innkeeper demanded. As amended by the court, it required the jury to find negligence or want of reasonable care before the plaintiff was entitled to recover for the loss of her property. The plaintiff, when she showed the loss of her baggage, etc., while a guest of the hotel, had made out a *prima facie* case, and it was then incumbent on the defendant to show that the fire was not caused by its or its servants' negligence or want of care in order to relieve itself from liability, unless such a defense was proved by the plaintiff, upon whom the burden did not rest. According to the record there was evidence that the fire was of "unknown origin" and that the defendant was not guilty of negligence and, whatever the evidence was, these facts must be assumed from the conclusions stated in the record.

If the fourth prayer had been so amended as to put to the jury the alternative that the plaintiff would be entitled to recover unless, instead of provided, the jury should find from the evidence that the defendant had not been negligent or had not been wanting in reasonable care and diligence to prevent the fire, it would have correctly stated the law, as we view the plaintiff's right and the landlord's duty. But has the plaintiff any reason to complain? The prayer as submitted by the plaintiff is not in accord with the view of this court as to the plaintiff's right and the defendant's duty with respect to the loss of a guest's goods through an accidental fire, and, if that prayer had been granted and a verdict rendered for the plaintiff and the defendant had appealed, there would have been a reversal. As said in *Gordon v. Opalecky,* 152 Md. 536, 552, 137 A. 299, 305, the plaintiff "cannot complain, because, while the modification did not cure its

inherent vice, it helped it." The plaintiff's argument was all directed to her contention that the rule of liability of an innkeeper in case of fire was correctly stated in her fourth prayer, and as we disagree with that, and hold that the innkeeper can meet this issue by showing no negligence or no want of care and diligence in the protection of his guests' goods in case of an accidental fire, the plaintiff was not harmed by the substitution of the court's instruction for her fourth prayer. The only fact in evidence was that the defendant was not negligent; a negative defense, yet the only positive evidence in the case except the fire itself. Under the circumstances, we regard the error in the court's instruction as harmless; the verdict appears to have been in accord with the uncontradicted evidence in the case. *Dippel v. Juliano,* 152 Md. 694, 702, 137 A. 514; *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 161, 73 A. 731.

The plaintiff contended that the so-called "Iron Safe Clause," Code, art. 71, secs. 5 and 6, had no application because such a safe was required in towns of five hundred or more people, and "Braddock Heights" not being incorporated, it was not a town. We agree that it does not apply, but for the reason assigned in *Maltby v. Chapman,* 25 Md. 310, where the statute was held not to apply to the baggage, personal effects, and money necessary for the traveler's personal needs, there being no contention here made by the defendant that the goods and money for which damages were sought were more than were reasonably necessary for the guest's purposes.

*Judgment affirmed, with costs.*